Please the court. Ben Gastel from Brandstetter, Strange and Jennings in Nashville on behalf of the plaintiff appellate, Joseph Howard. I would like to reserve three minutes for rebuttal. You may. This case concerns the systemic and pervasive failure of the State of Tennessee to follow the National Voter Registration Act, which requires Tennessee, through the Department of Safety, to allow applicants for state driver's licenses to simultaneously apply to register to vote by making the voter registration application part of the driver's license application. I wonder, you've worked hard on this, and I wonder if you figured, or the state has explained to you, there must be some hang up why they can't do it the way the law prescribes. Really, I think that maybe the Attorney General is the best person to explain why the state is not following the NVRA. From the plaintiff's perspective, Your Honor, I don't see any technological reason why this cannot be done. That's what I'm asking. In your discovery, did you find some impediment? We did, Your Honor, ask. We deposed the people who run the A-List system, which is kind of the software backbone and the website and online systems. I think that the direct quote is that we can make the system do anything if we are given enough time to be able to implement it. So why don't you address standing, if you would. Sure. So, as the Court is all too aware, standing essentially has three elements, injury in fact, causation, and redressability. I don't think that there's really any debate that in November of 2016, on the eve of the very contentious November election of that year, that Plaintiff Howard suffered a concrete and particularized injury in fact. He was not timely registered to vote. That's not an injury as a counsel? The fact that he wasn't timely registered? Well, it certainly would have been, Your Honor, if he was disenfranchised. He wasn't disenfranchised. We all agree about that. Well, he was not disenfranchised, Your Honor, because of the filing of the suit and the order of the Court on the eve of that election requiring him to be registered and to be allowed to vote. So, in this case, you know, everyone concedes that through the filing of the lawsuit, he was allowed to register to vote. But is it your contention that even though he were allowed to vote because of the lawsuit, that this is an injury that is likely to be repeated, absent some broad change, or that the State could circumvent the statute because, in this case, it's something that can't be resolved in a timely fashion until, I mean, whenever it comes up? I don't understand. You were talking to us about the three prongs. So why don't you tell us why there is an injury and how you satisfy each of those prongs? Sure. So his injury, in fact, is his stripping of his statutory right to simultaneously apply for a driver's license and apply to register to vote. That had a concrete and particularized effect on him because he could not timely register to vote for the election as a direct result of his inability. Even if he were, this was later on, cured as to this particular plaintiff, you're saying the fact that he went in in the system to vote and he didn't get that registration simultaneously, that that's the injury, not something else? The injury, I think, is definitely his statutory right of simultaneous application of driver's license and register to vote, which was denied him because the State of Tennessee uses an undisclosed voter registration form in its driver's license applications. In other words, and this also goes to causation and the redressability prongs, is that his injury derives from the fact that his driver's license application does not include a voter registration form. But the question here, at least my question, concerns injury, and the injury here, we know that the law requires the injury to be concrete. That adjective has to have some meaning. I'm questioning you whether or not your plaintiff's injury here is theoretical as opposed to concrete. Can you address that question? The theoretical, you understand what it is. Because he wasn't registered in the way the law requires, timely, and there was undisclosed form, etc., but he was registered timely to vote. In other words, however it was done, it wasn't according to the regular statutory scheme. So the real injury, a concrete injury, would be another plaintiff who came in and never filed a lawsuit and never got the extraordinary remedy that your client managed to get and did vote. So he wasn't arguably not disenfranchised here. He wasn't. He voted. Your client voted. Sure, but the whole point of the NVRA is to guard against… What's the whole point of the word concrete? That's where I'm sort of struggling. But the point of the NVRA is to guard against the need to take any additional action whatsoever other than fill out a driver's license application. Everybody agrees it wasn't public. Here, Howard, in order to do that, had to take that additional action. He had to take the extraordinary action of hiring sophisticated legal counsel to go in and get an extraordinary remedy in a federal court in order to register to vote. That's the exact type of injury that the NVRA is guarding against, the act that you shouldn't have to take any additional action, let alone the extraordinary action of having to file a federal lawsuit and run into federal court on the eve of an election. But he won, right? Yes. On November 4, 2016, with the entry of the agreed order, his injury was relieved, was it not? Yes. And that ultimately goes to whether or not his claim is moot. Hypothetically, Mr. Howard, well, it's not hypothetical, he got registered to vote in 2016. Let's say coming up in 2018, in late July, he changes his address and needs to file a change of address form with the state of Tennessee. Now under the act, that should allow, he should be able to do that in a one-step process. Let's say that happens, hypothetically, what happens in that situation when he changes his address? Asserts to get that, effectuate that change of address with the state. Is he likely to suffer this injury again? Your Honor, we don't have to hypothetically wonder whether or not that happened. That happened to Mr. Howard during the pendency of this lawsuit. He moved, he filled out the change of address form, and the change of address form, in violation of the NVRA, did not automatically register him or update his voter registration record. He had to take, and again this goes to additional concrete and particularized injury, he had to take additional action in order to effectuate his voter registration. Was the injury the effort he had to put forth to manage to vote? No, I'm talking about the... Yes. Is that the injury? That's the concrete and particular nature of his injury, yes. But his injury in fact, his statutory, his injury in fact is the statutory stripping of his statutory right to simultaneously apply for a state driver's license and apply to register to vote. There is an interesting case that came out from the Western District of Tennessee, or Texas, after the briefing closed here. It's Stringer v. Pablos, 2018 Westlaw 2193034, which really... When was that opinion issued? It came out May 10th, 2018. Would you repeat the site again please? Sure. 2018 Westlaw 2193034. You didn't file that citation as additional authority with our court, did you? I have not. But it does go ultimately to the issues that the panel is raising today because in that case, again you had people who were stripped of their statutory right to both simultaneously apply for, in this case it was change of address transactions, and update their voter registration records. And they ultimately had their voter registration records updated before an election without the filing of a federal lawsuit. And in that instance, once again, the court there finds standing and finds that their claim is not moot principally because the systemic cause of those statutory violations continue unabated. And that's the exact situation here. Tennessee has not updated its voter registration process. What was the nature of the claim there? It was a pure NVRA claim claiming that the change of address forms and the renewal applications were not in compliance with Section 205.04 and seeking a temporary and permanent injunction. Injunction, injunctive relief. Yes. Okay, I would think that's a bit distinguishable. Well, that's exactly what Plaintiff's complaint here alleges is that he wants a temporary and permanent injunction ending the state's use of an application that's in violation of Section 205.04. And that's precisely the… The district court found no standing. Yes, and that's the precise relief that he was denied by the district court because the district court found that he lacked standing and that his claim was moot because the district court allowed him to vote. But that's just a recipe of defaming the NVRA. Because if every single time the state can just get over its systemic violations by simply allowing people to vote or updating voter registration records, then the NVRA is a toothless statute. Because it's not a vehicle for… Essentially, without relief, if this is repeated, it would seem that if you take the state's position in the face of a lawsuit, they can cure it and move forward. So if this happens to, let's say, 20,000 people who go in and do this, you would need to have 20,000 legal actions. And addressing each one of those to let that person vote would be enough to satisfy whatever. That would seem like that would be really, really cumbersome and, as you say, toothless. On some level, impossible, Your Honor. And that's why I don't think that the standing doctrines or the mootness doctrines are an impediment here to using the NVRA as a vehicle for that systemic change that needs to happen. Because, again, it's not theoretical that Mr. Howard may or may not suffer additional rights or additional violations of his rights under the NVRA. It happened to Mr. Howard. All right. We have your argument. Thank you, counsel. Mr. Campbell. Good morning, Your Honors. Good morning. I am Andrew Campbell of the Tennessee Attorney General's Office here on behalf of all of the state defendants. And, Your Honor, we ask that this court affirm Judge Trauger's decision in all respects. Some of the questions that Your Honors already have asked serve to highlight a point that I wanted to make on the front end. We need to be precise when we talk about this case. This case is not about online registration transactions. It is not even about online change of address transactions. It's not about kiosk transactions. The reason that this case is not about any of that is because none of it was alleged in the complaint. But didn't Mr. Howard allege that he went online to complete the application? The form did not pop up. He printed off his form and then went in person to the kiosk to effectuate this. And so is it – I mean, that seems like a pretty slight distinction there. Your Honor, not precisely. What Mr. Howard alleged was that he accessed the driver's application form online, filled it out on his computer in the quiet of his study, and then brought it to the driver's license center for presentation and that he had checked affirmatively the question number eight, would you like to register to vote today? Now, under that process – and this gets to a question that Judge Cook asked earlier – under that process, the department procedures mandate the examiner behind the counter to print a pre-populated voter registration form for the applicant to review, sign, and submit. Did that happen in this case? For whatever reason, that did not happen. Okay. Now, let's assume that Mr. Howard had continued on with the online application, completed it, and then answered that question eight. What should have happened under Tennessee's procedures? Under the Tennessee's – the transaction that Mr. Howard wanted – needed to perform only could be done in person. It could not be done online. So, to answer Your Honor's question, he takes the driver's license application form to the driver's license center and presents it to the examiner on the other side of the counter. And the mistake – was it – is this atypical? I thought you were about to tell us. It is atypical, Your Honor. We have – That the person didn't then follow through and present the registration that day for him to sign. Correct. The entire cut and thrust of the plaintiff's argument is that this is a systemic failure. It is not. Is there anything in the record below about the error rate of Tennessee's NVRA procedures? Yes, Your Honor. We submitted a declaration from Michael Hogan, who is the Director of Driver Services for the Department of Safety. It's found at docket entry number 21-2. And Mr. Hogan stated in his declaration that between February and November of 2016, over 310,000 in-person driver's license applications and voter registration forms were processed. Plaintiff only was able to identify six. In the immediate way. Sorry? In the immediate way. They were processed – Correct. As should be. Correct. Here, sign here. To be clear, processed in accordance with the department policy that when someone walks up to the counter and says, I would like to register to vote, a pre-populated voter registration form is given to them, and it is then submitted to the local election officials so they are on the voter rolls. The transaction has to occur in person. It can't occur online because you have to have your photo taken. That photo is subjected to facial identification imaging capture. You were about to say how many, out of that 300,000, there were found to be an error or the process broke down? 310,000 were processed over that period of time, February to November, and the plaintiff only has been able to identify six complaints with regard to that process. And all of them, by the way, were resolved. To address a question asked by Judge Cook earlier, to paraphrase, I think your Honor said, why can't the state do it as the statute prescribes? In short, we are. The statute specifically allows us to use two forms. The consent order, which the plaintiffs have cited repeatedly in the lower court and here, specifically allows us to use two forms. And the reason that we do is because the voter registration form requires additional information that's not contained on the driver's license application. It also needs to be signed. It also needs to be sworn to. And it also goes to an entirely different recipient. It goes to the Secretary of State's office. It does not go to the Department of Safety for the issuance of a driver's license. Okay, but the complaint here is not the requirement, as I understand from the plaintiffs, from the appellant, their complaint is not that Tennessee uses two forms, but the failure of the process of the plaintiff getting access to the form in a timely way. I thought that was their argument. That is their argument, and their argument misconstrues the statute. Their argument states that the statute requires that both forms be given to the applicant simultaneously. That's not what the statute says. The statute says that both applications should be made simultaneously. And again, in Mr. Howard's instance, the only way to do that is at the counter at the driver's license center. But the shortcoming, at least from the states admitted, the state admits that the shortcoming occurred with the deputy or whomever worked the transaction with Mr. Howard in failing to take the next step. For summary judgment purposes, we conceded that the error occurred with the examiner because that is a liability issue and it does not go to issues of mootness and standing. The plaintiff, however, submitted additional information on his own from a representative of the Davidson County National Metro Election Commission, which specifically said that the Department of Safety sent documentation demonstrating that Mr. Howard's registration was received by the Davidson County Election Commission. So as a matter of fact, as a matter of liability, who made the mistake? Was it the Department of Safety? Was it the Davidson County Election Commission? That point is not known. For mootness and standing, it's not necessary to know it. The lower court did not have jurisdiction over these claims with regard to online and kiosk transactions. It certainly had jurisdiction over the in-person transaction. No jurisdiction with regard to the online and kiosk transactions because no written notice was tendered to the state, and that is a jurisdictional requirement under Section 2510B. No notice, no jurisdiction. And the notice must be violation-specific. That's the way the statute reads. If an applicant is aggrieved by a violation, that applicant must provide written notice of the violation to the election official of the state before the applicant can file a lawsuit with respect to the violation. And the purpose, as this court previously has held, the purpose of that provision is obvious. It is to allow the state to correct the error. A plaintiff is arguing that there is a systemic problem here. There's no evidence of a systemic problem. Once again, six complaints out of 310,000 driver's license and voter registration forms processed properly. So the only thing, I'm sorry. Well, you said that six out of 310,000. How are those complaints manifested? What is it about those that causes the state to identify those as errors? Is it because the applicant comes in and brings it to the state's attention? Is it some audit that the state does that identifies these as problematic? How do you find out about the six? Slight correction, Your Honor. These were identified by the plaintiffs as errors. The complaints manifested themselves as emails which were sent to the state, sent, golly, either to the regional election officials or to the state. And Mr. Hogan's declaration addresses all six of them. Okay. So the state, based on its own auditing procedures, you don't really know whether there are six, 60, or 6,000 because you're relying on the complaints that they have brought to your attention. Correct. They have the burden of proof. Okay. I understand that. But I'm just saying, you know, as a government, you have a process that you are concerned about the integrity of that process. Certainly. And you want to, you know, you said the state is doing this and they're adhering and they're trying. That's what you want. That's what Tennessee wants. Correct. Okay. But there is no audit procedure that you could have that would let you know if there are, in fact, six, 60, or 6,000. And I understand they have the burden of proof. Your Honor, I don't want to say that there is no audit procedure. I simply am not familiar with one and not prepared to discuss one. Fair enough. The only thing that we're left with is the plaintiff's original complaint. With regard to his, for whatever reason, failure to get registered prior to the November 2016 election. That was resolved, as Judge Hale has noted, that was resolved by the agreed order that directed the state to do nothing, directed the Davidson County Election Commission to get him registered. And he was. And he voted. And he never has been deprived of his franchise. He hasn't been, to turn back for a second with regard to his change of address transaction, he hasn't been deprived of his franchise in that respect either. His address was updated. Plaintiff's complaint about that is, well, yes, his address was updated. But it wasn't updated in accordance with the procedure that is mandated by the statute. That is an inchoate, intangible, non-concrete injury that he doesn't have standing to pursue. Assuming that he followed the first two prerequisites. Number one, sending written notice of a problem. And number two, articulating it in a complaint. If your honors were, for example, to remand this case back to the district court to consider that claim, in order to bring this case in compliance with federal rules of civil procedure, your honors also would have to issue an order directing the district court to allow the plaintiff to amend his complaint. That would necessitate a finding of abuse of discretion. No abuse of discretion occurred here because the plaintiff never asked to amend his complaint. There's no motion to amend on file. This allegation was made in a summary judgment motion after the deadline for the pleadings had expired, after discovery had been closed, and a motion, by definition, is not a pleading. Your honors, if you have no other questions, I'll rest my argument, and we ask for the judgment to be affirmed. Thank you. Thank you. The district court and the appellees both speak in terms of transactions. You heard Mr. Campbell mention a lot that the transaction was completed in person. The NVRA does not speak in terms of transactions. It speaks in terms of applications. It does not matter under the NVRA how Howard completed his transaction. It matters that the application he filled out to instigate that transaction failed to comply with the NVRA because it did not include the voter registration form. It did not because the voter registration application is not part of the driver license application. In the exact same way- People don't have- I guess you'd have to acknowledge, counsel, that there are individuals who wish to get a driver's license and are not simultaneously seeking to register to vote. Sure. They didn't check the box, for example, right? But the point is- You want it to be one simultaneous transaction for Mr. Howard who did. Yes. You heard the state argue that you have to be in person for your facial recognition, other features that require in person. What about that? Absolutely. There are some people who want to just get a driver's license and not register to vote. The NVRA contemplates that. Each state- I'm quoting- 205.04.A1. Each state motor vehicle's driver's license application submitted to the state motor vehicle authority under the state law shall serve as an application for voter registration unless the applicant fails to sign the voter registration application portion of the form. So the application can't be two pages? I'm not saying that the application can't be- That doesn't dictate that it all be- as opposed to your undisclosed form. Those words don't dictate that it must be one piece of paper, does it? But section C of 205.04 then goes on to talk about how that's effectuated. It says each state shall include a voter registration application form for elections for federal office as part of an application for state motor vehicle driver's licenses. It is very clear. What does part of necessarily mean? I guess I'm not sure. Well, whatever the- Part of the transactions. Absolutely. Maybe. Whatever the outer bounds of that term means, it certainly does not encompass the process here. No. Because the voter registration form is not attached. It's not contained. It's not referenced. It's not mentioned. It's not included in the driver's license application. It's not part of it. And that's ultimately Plaintiff Howard's complaint, and the reason why we're asking you to overturn his dismissal, find that he has standing, find that his claim is not moot, and order full compliance with section 205.04 of the NVRA. Thank you very much. Thank you. Gastel. Thank you, Your Honor. We have your case. We will issue an opinion in due course. Thank you.